## John M. Dalrymple v. Daniel Sheehan and James McGonegal.

*Mortgage of vessel: Assignment: Rights of assignee: Equities of mortgagors.*
The assignee of a mortgage of a vessel takes it with all the rights and powers which were possessed by the mortgagee; and no equities existing between several mortgagors will deprive the assignee of any of the usual remedies for the enforcement of the security.

*Heard and decided April 23.*

Appeal in Chancery from Wayne Circuit Court.

The complainant, Dalrymple, and one of the defendants, Sheehan, on the twenty-sixth day of December, 1867, bought of Thomas Reath the brig Sunbury, used in navigating the northern lakes and rivers, at the agreed price of $8,500. The complainant in his bill avers that it was understood and agreed that he and Sheehan should each pay said Reath for said vessel, the sum of $4,250, and should be equal part owners of said vessel. That on such purchase the complainant paid to Reath, on his part of said purchase money, the sum of $3,500, leaving of his share of said purchase money, only $750; and Sheehan paid on his part of said purchase price only the sum of $2,510, leaving of the amount to be paid by Sheehan, $1,740 still unpaid.

The bill further charges that Sheehan, for the purpose of obtaining an undue advantage, proposed that they should

give their joint notes and a joint mortgage on the whole of the vessel to said Reath to secure the whole of said unpaid purchase money, and accordingly they gave their three joint notes, as follows: One for $1,000, payable July 1st, 1868; one for $1,000, payable December 1st, 1868; and one for $490, payable July 1st, 1869. And they also gave to said Reath as security for the payment of said notes, their joint mortgage on said vessel for said sum of $2,490. The bill further states that the first of said notes has been paid, leaving at most only $250 and interest of the part of said purchase money unpaid, which belonged to the complainant to pay, and leaving $1,240 of the share of Sheehan unpaid.

The bill then proceeds to set forth the facts of a controversy existing between the two mortgagors,—the filing of a bill in the Wayne Circuit Court in Chancery by Dalrymple against Sheehan, and avers, that while proceedings were pending for the appointment of a receiver, Sheehan, entered into secret combination with James McGonegal, the particular terms of which combination are not stated, but the result of which is charged to be that McGonegal, on or about April 28th, A. D., 1869, purchased, or pretended to purchase, the two last named notes of said Reath, with the accompanying mortgage, and took an assignment of said Reath, and now pretends to own said notes and mortgage. The bill charges McGonegal with notice of the equities existing between Dalrymple and Sheehan, and also charges him with the purpose and intent, in league with said Sheehan, to cheat and defraud Dalrymple of his rights in the vessel by a possession and sale thereof; and that he for that purpose had entered upon said vessel, lying at the port of Detroit, and assumed and claimed possession of her, and in pursuance of a power of sale contained in said mortgage, had given notice, that he should proceed to sell said vessel in pursuance of a power of sale, and upon an alleged default claiming that there was, at the date of said notice, $1,634 due on said mortgage.

The bill prayed that an account might be taken and stated of the amount due on said two last named notes, and what parts and proportions thereof belong to Dalrymple and Sheehan to pay, that Sheehan might be decreed to pay and satisfy his part thereof, and McGonegal to accept the same, and to relieve and discharge Dalrymple and his property from all liens and responsibility in respect thereof, he offering to pay his part thereof and any sum ordered by the Court; that a receiver might be appointed, and if any sale of the property, or any interest therein, should become necessary that it might be done by the receiver, under the direction and authority of the Court; and if said Sheehan should not pay or satisfy his part of the debt, and a sale become necessary, that the right and interest of said Sheehan might be sold in the first instance to pay the part of said debt belonging to said Sheehan to pay, before resorting to the right and interest of Dalrymple, and before holding him personally liable.

The bill was taken as confessed as against Sheehan. McGonegal answers denying all knowledge of the facts on which the equities alleged in the bill are charged; denying that any portion of the amount due upon the said notes and mortgage, is the several debt of either, and insisting that the same is the joint debt of both. He denies the combination and conspiracy charged in the bill, and avers that he bought the said notes and mortgages in good faith and paid therefor their full value. He admits that he has taken possession of said brig and advertised her for sale, as stated in said bill, but denies that it would be just or proper to compel him to sell each half of said vessel separately, and insists that he has nothing to do with the state of the accounts between said Sheehan and Dalrymple. He claims also the benefit of a demurrer to the bill.

The cause was tried in open Court, as in a suit at law, and the Court adjudged that there was due, at the date of the decree, on the notes and mortgage held by the defendant Mc-

Gonegal, being the two last notes mentioned in the bill, the first not having been paid, for principal and interest the sum of one thousand eight hundred and twenty-one dollars and seventeen cents, of which sum $283.25 belongs to the complainant to pay, and $1,437.92 belongs to the defendant, Sheehan, to pay. The Court directed the injunction to be retained, and that the vessel be sold by the receiver, and that he bring the moneys into Court. The receiver was also directed to give notice to creditors who have liens on the vessel to present their claims for adjustment to him, and that he report the list of claims presented, etc.

From this decree, McGonegal appeals to this Court.

*Levi Bishop,* for complainant.

The bill sets forth the following grounds of equitable jurisdiction: 1. Account of sums due on the mortgage. 2. Account of what each mortgagor ought to pay. 3. To prevent a sale after our offer to pay. 4. To compel a sale in separate shares. 5. Injunction. 6. Receiver.

The legal aspects of the case may be stated briefly as follows: We were entitled to have an account stated of the amount due on the notes and mortgage, and the amount that each mortgagor equitably owed of that amount.

McGonegal, when he attempted to sell, in May, 1869, did not stand in the place of a *bona fide* purchaser. There were two notes unpaid when he bought the mortgage; one was over due; and the other was not yet due, so that he could take no proceedings on it.

Again, we were clearly entitled to a decree, that Sheehan should pay his part of the mortgage before resorting to our property, and that we should be permitted to pay ours, and that the mortgagee should be compelled to accept it. If the vessel was to be sold, we were entitled to have each one-half sold separately. To do otherwise would be against well settled principles of common and statute law. The owners

of vessels, generally, and in the absence of special agreements, are part owners, and they are not partners.—*3 Kent, 215, 219, 20–1; Robinson v. Rice, 3 Mich. 240.*

In other words, each part owner has a right to a certain share of the property, distinct from the other part ownership thereof. Each part owner holds or may hold, by different title and conveyance from the other part owner, and may separately sell or encumber his share, without consulting the other part owner, or in any way affecting his interest. The offer to pay our share of the mortgage was a virtual extinguishment of our half of the debt on the vessel. —*Fuller v. Parish, 3 Mich., 211; Moynahan v. Moore, 9 Mich., 9.* A mortgagor may redeem, even after forfeiture.— *Van Brunt v. Wakelee, 11 Mich., 177; Tannahill v. Tuttle, 3 Mich., 104; Hogsett v. Ellis, 17 Mich., 351.* The case is the same therefore as that of the titles of different part owners of land. The rights and interests of all are distinct and separate, though they may be in the same piece of property. And a mortgage of such interests by all or a part of the owners, is a mortgage of several rights and titles, as much as a mortgage of different rights of several parties in the same or in separate and distinct parcels of land. If two or more persons should join in a mortgage of separate parcels of real property held by each, there could be no doubt that a mortgagee would be compelled to sell the right of each in separate parcels. This is the common law rule in equity on the subject.—*2 Hoff. C. P., 145.*

The same rule holds generally as to judicial sales of personal and chattel property.—*Green's Practice, 203; 2 C. L., 4,470; Perkins v. Spaulding, 2 Mich., 157.* This is also the statutory as well as the common equity rule, in regard to sales of real estate on executions and on mortgages.—*2 C. L., 3,127, 3,564, 5,183.*

Now, it appears from McGonegal's answer that he persists in selling the rights of these two part owners as a

whole. What can be his object? He is entitled to his money and nothing more; and his attempt to sell the property in the manner proposed, is not only wrong, but it is doubtless intended to strip us of our share of the property to pay a debt of Sheehan's, and is strong evidence of collusion with Sheehan.

The injunction granted by the Court below was a proper relief in the case. The appointment of the receiver, was also a proper relief, pending the litigation. Receivers are granted as against tenants in common.—*Edwards on Receivers, 441; 2 Daniels, C. P., 1,418, and note; Williams v. Jenkins, 11 Georgia, 595.* Receivers are appointed generally in cases of part owners of property.—*Edwards on Receivers, 151.* Of part owners of steamboats, and the receiver may run the boat.—*Same, 151-2; Crane v. Ford, Hopkins, 114.* Of part owners of mines and collieries, who are tenants in common.—*Edwards, 152-3.* And of a newspaper establishment, which may be carried on by the receiver.—*Same, 156-7.*

We ask that the decree be modified, so as to require a sale of each share separately, if a sale shall be necessary, to satisfy the part of the debt which belongs to each mortgagor to pay, and that in other respects the decree be affirmed. This is the only way, as it appears to us, to prevent irreparable mischief, and even fraud, based upon collusion, as against the complainant.

*Newberry, Pond & Brown,* for McGonegal.

I. The bill not only shows no equity, but shows affirmatively that complainant *could* have none. As between himself and Sheehan, complainant is probably entitled to the account he sought in the other suit. But this cannot affect McGonegal. He is no party to their litigation, and only seeks to recover the amount due upon his mortgage, by the ordinary process of foreclosure. He has no interest

in any account, except that of the amount due upon his mortgage; and even if something had been paid, as alleged in the bill, would be entitled to sell, if anything remained due.

Even if Reath and McGonegal had been privy to the alleged misrepresentation of Sheehan, that each moiety was to be separately bound, complainant would not be entitled to relief, as he only claims to have been misled as to the legal effect of the mortgage. This is a mistake of law against which equity will not relieve.—*1 Story's Eq. Juris.*, §§ *110, 120.*

But the bill does not show that Reath was a party to the alleged misrepresentations, or had any knowledge of them, and of course, he cannot be prejudiced by Sheehan's act. McGonegal is certainly entitled to all of Reath's rights, and cannot be placed in a worse position than he. Though he purchased with notice of the alleged equity, he is no more bound by it than Reath.—*1 Story's Eq. Juris.*, §§ *409, 410; Godfroy v. Disbrow, Walk. Ch., 260; Harrison v. Forth, Prec. Ch., 61.*

The apparent gist of the bill consists in the allegation that Sheehan and McGonegal conspired together " to wrong and injure complainant, by a purchase and foreclosure of the mortgage." But the law will not take notice of a conspiracy that is not formed either to accomplish an unlawful purpose, or a lawful purpose by unlawful means. — *2 Bish. Crim. Law*, §§ *149 to 164; Alderman v. People, 4 Mich., 414; People v. Clark. 10 Mich., 310.*—But how did this combination tend to wrong or injure complainant? The sale gives McGonegal no greater power than Reath had, and complainant had no assurance that Reath would not foreclose immediately.

After asking for an account in which McGonegal has no interest, the burden of the prayer is that the brig, if she is to be sold, be sold in separate moieties. Complainant, however, is in no position to ask for a marshalling of assets. Equity

will not interfere for this purpose, except in cases of conflicting claims of creditors. It will not take notice of disputes between debtors.—*1 Story's Eq. Juris. 633, 645; Gen. Ins. Co., v. U. S. Ins. Co., 10 Md., 517.*—Complainant may have a claim against Sheehan, but even regarding him as Sheehan's creditor, he has no lien upon his half of the vessel, and it is only a creditor having a lien who can ask for a marshalling of securities.

Again: Dalrymple and McGonegal are not creditors of the same common debtor,—a fact that lies at the foundation of this jurisdiction.—*1 Story's Eq. Juris. §§ 642, 645.*

The prayer for a sale in moieties certainly has the merit of such originality that we have been unable to find a case upon the point. We submit, however, that the utmost equity will ever do, is to prescribe the order of sale, where there are separate parcels of property to be disposed of. The power of dividing a single parcel into fractions no one has yet been bold enough to assert. It will not thus compel a party to become tenant in common with another. If a Court can divide a parcel into halves, it might with equal propriety divide it into fifteenths—an arrangement which would of course ruin the sale. It is a prime requisite with respect to the marshalling of assets, that no injury be done to the creditor, by which the value of his security shall be impaired. We submit that the bill shows nothing entitling complainant to relief.

II.—If there is any doubt upon this point, however, the testimony effectually dispels it. There is not a word to show that either Reath or McGongal knew of Sheehan's misrepresentations; that the purchase by McGonegal was the result of any collusion between him and Sheehan; that anything was ever paid upon the two last notes; or that McGonegal had knowledge of any litigation which could affect his rights.

III.— The decree does not follow the allegations or prayer of the bill, but is in direct conflict with them. One of the

material charges against McGonegal is, that he proposed to sell the vessel as a whole; and complainant prays particularly, that if she is to be sold, she may be sold in separate moieties. Yet the decree condemns her to be sold as an entirety. This is erroneous, for the complainant cannot have, under his general prayer, relief inconsistent with that specifically prayed. *1 Dan. Ch. Prac. 384, note: Story's Eq. Pl. Sec. 41: Stone v. Anderson, 6 Foster 506: Hilleary v. Hurdle, 6 Gill. 105; Wilkin v. Wilkin, 1 Johns. Ch. 117.*

PER CURIAM.

There were no equities attaching against the liability sued on, as against the original holder, who had a perfect right to enforce it according to its terms. This being so, there is nothing to prevent McGonegal, as assignee, from enforcing the same rights. He had a right to purchase it and to proceed upon it in any lawful way. The fact that there were equities between Dalrymple and Sheehan cannot raise equities as to third parties, who may require performance of the contract as the parties saw fit to make it.

As the mortgage was on the entire vessel, it should be so treated on foreclosure. There would be no propriety in selling the half interest separately. In marshalling securities covering several parcels, the land may be sold in such order as will best carry out the principles of equity, but there is no instance where an entire parcel, mortgaged as such, has been sold in separate undivided interests; nor would such a sale of a vessel tend to raise more money than a sale of the entirety. It would rather lead to mischief, as it might be a decided objection to purchasing one half, that the other was in bad hands.

There is no equity in the bill, and it should have been dismissed below, as it must be here.